UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFF HEMPHILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-2131-B |
| | § | |
| CELANESE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Celanese Corporation's Motion for Summary Judgment (doc. 24). For the reasons stated below, the Court **GRANTS** the Motion (doc. 24).

## I.

## BACKGROUND[1]

This action arises out of Plaintiff Jeff Hemphill's ("Hemphill") employment with Defendant Celanese Corporation ("Celanese"). Celanese is a publicly traded company engaged in the manufacture and distribution of industrial chemicals. (Def. Celanese Corporation's Br. In Supp. Of Mot. For Summ. J. ("Celanese's Br.") 2; Pl.'s Br. In Opp'n to Def.'s Mot. For Summ. J. ("Pl.'s Br. In Opp'n") 3.) Celanese hired Hemphill as an Internal Audit Manager in the Global Audit Services Group ("Audit Group") on March 20, 2006. (Celanese's Br. 3; Pl.'s Br. In Opp'n 3.) Prior to being hired by Celanese, Hemphill had served as an internal auditor and audit manager for KPMG, Nortel

---

[1]The Court takes its factual account from those uncontested facts contained in the Parties' papers and pleadings. Any disputed fact is identified as the allegation of a particular party.

- 1 -

Networks, and BellSouth Corporation.  (*Id.*)  In his audit position with Celanese, Hemphill conducted various types of audits intended to ensure compliance with company policy and legal requirements.  (*Id.*)  Such audits would typically require Hemphill to conduct interviews and review documentation, then report his findings or conclusions to his superiors.  (*Id.*)

Hemphill's direct supervisor was Robin Stephenson ("Stephenson"), Celanese Director of Internal Audit.  (*Id.*)  Stephenson, in turn, reported directly to Donna Wegner ("Wegner"), Celanese Internal Audit Vice President. (*Id.*) Celanese alleges that Stephenson counseled Hemphill regarding his allegedly poor job performance in the spring and early summer of 2007, specifically citing that Hemphill's "staff's work was not always well-monitored, his superiors were not regularly updated, he missed deadlines, and the quality of his audit review failed to meet expectations." (Celanese's Br. 8.)  Celanese further alleges Wegner additionally counseled Hemphill at this time regarding issues with his work performance.  (*Id.*)

During his employment with Celanese, Hemphill was subject to Celanese's Business Conduct Policy ("BCP") which governed employees' conduct to help ensure integrity and accountability in the workplace.  (Celanese's Br. 2; Pl.'s Br. In Opp'n 3.)  Under the BCP, each Celanese employee was charged with reporting any suspected violations of the BCP or current law.  (*Id.*)  Employees were able to make such reports via an ethics helpline, the internet, mail, fax, or by contacting a regional coordinator.  (*Id.*)

**A. The Ocotlan Audit**

In early 2007, Hemphill began work on a Celanese audit involving a plant in Ocotlan, Mexico (the "Ocotlan Audit").  (Celanese's Br. 4; Pl.'s Br. In Opp'n 4.)  The Ocotlan Audit's review identified a potential Foreign Corrupt Practices Act ("FCPA") violation involving the possible

payments of cash and goods to the city of Totolan in exchange for a right of way contract. (*Id.*) While Hemphill was not responsible for initially identifying the potential violation, he assisted in a review of the issue. (*Id.*) Celanese alleges it ultimately determined the payments did not constitute any type of FCPA violation, however, the issues were included in the project's audit report. (Celanese's Br. 4.)

Additionally, the Ocotlan Audit identified a potential conflict of interest existing between a Celanese employee and his brother who worked for a city from which Celanese was attempting to acquire another right of way. (Celenese's Br. 4-5; Pl.'s Br. In Opp'n 3.) The Audit Group determined this conflict did not constitute a violation of any law, but did violate Celanese company policy, and the employee was removed from the project. (*Id.*)

### B. The Expense Reporting Investigation

In the spring of 2007, Donna Tillapaugh of Celanese Global Transaction Shared Services referred several questionable expense reimbursement submissions made by Celanese employees to the Audit Group for further investigation. (Celanese's Br. 6; Pl.'s Br. In Opp'n 3.) Hemphill participated in the Audit Group's investigation of these expenses ("Expense Reporting Investigation"). (*Id.*) Several of these employees were found to have engaged in violations of Celanese's company policy regarding expense accounting. (Celanese's Br. 7; Pl.'s Br. In Opp'n 3.)

### C. The Shirley Hall Incident

In August 2007, Hemphill began the process of renting a boat to be used as part of a corporate outing. (Celanese's Br. 8; Pl.'s Br. In Opp'n 3.) Shirley Hall ("Hall"), an audit group secretary, was assisting Hemphill with the rental. (*Id.*) On August 14, 2007, Hall sent Hemphill an email regarding the boat rental. (*Id.*) Hemphill proceeded to emerge from his office and yell at Hall

in a raised tone of voice. (*Id.*) Celanese alleges that John Fotheringham ("Fotheringham"), Celanese Director of Corporate Development, and Tonya Donaldson ("Donaldson"), Fotheringham's executive assistant, overhead Hemphill yelling in an "aggressive" and "abusive" manner from several offices away. (Celanese's Br. 9.) Fotheringham and Donaldson worked in a separate department from Hemphill and had no prior knowledge of his audit work. (*Id.*)

Donaldson approached Alan Maxwell ("Maxwell"), Celanese Director of Human Resources, with her concerns regarding the incident. (*Id.*) Maxwell subsequently assigned Zarinah Curry ("Curry") to investigate the incident. (*Id.*) Curry was a new human resources employee with no prior knowledge of Hemphill. (*Id.*) Maxwell additionally notified Wegner of the investigation's existence. (*Id.*)

Celanese alleges that Curry interviewed Hall, Donaldson, and Fotheringham as part of the human resources investigation, and all three employees confirmed Hemphill had acted in an aggressive and unprofessional manner towards Hall. (Celanese's Br. 10-11.) Curry additionally interviewed Hemphill regarding the incident. (Celanese's Br. 10; Pl.'s Br. In Opp'n 3.) During this interview, Hemphill denied yelling and/or making unprofessional comments to Hall. (*Id.*)

At the conclusion of the investigation, Curry recommended that Hemphill be terminated because of he lied during a formal investigation, harassed an employee, and created a negative work environment for those around him. (Celanese's Br. 11; Pl.'s Br. In Opp'n 3.) Joseph Fox ("Fox"), Celanese Vice President of Human Resources and Employment Law, and Maxwell agreed with Curry's assessment and recommended Hemphill be terminated for his behavior. (*Id.*) Although initially hesitant, Wegner ultimately agreed Hemphill's termination was an appropriate measure. (Celanese's Br. 12; Pl.'s Br. In Opp'n 3.) Celanese officially terminated Hemphill on September 4,

2007. (*Id.*)  Hemphill was subsequently hired as an internal auditor with A.C. Lordi on September 24, 2007. (*Id.*)

### D. The Instant Action

Hemphill filed this suit against Celanese on December 2, 2008 asserting claims for violations of the whistleblower protection provisions of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A.[2] (*See generally* Compl.)  In his Complaint, Hemphill alleges he was terminated in response to the reports he made as part of the Ocotlan Audit and Expense Report Investigation. (Compl. ¶ 6.)  On March 2, 2010, Celanese filed the instant Motion for Summary Judgment.  Having considered the Parties' briefing and the relevant law, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Whether a fact is material is determined by the substantive law governing a matter.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The summary judgment movant bears the burden to prove that no genuine issue of material fact exists.  *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990).  However, if the non-movant ultimately bears the burden of proof at trial,

---

[2]Notably, Hemphill filed an administrative complaint with the Occupational Safety and Health Administration ("OSHA") on September 17, 2007. (Compl. ¶ 5; *see* Celanese's Br. 5.)  OSHA entered its findings on February 8, 2008 pursuant to the provisions of 18 U.S.C. § 1514A(b)(1)(a), and Hemphill subsequently filed his objections. (*Id.*)

the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.*

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). All factual controversies as to whether a genuine issue exists for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

**B. The Whistleblower Protection Provisions of the Sarbanes-Oxley Act**

The whistleblower protection provision of SOX provides, in relevant part:

> No [publicly-traded company] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [18 U.S.C.] section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by . . . (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . .

18 U.S.C. § 1514A(a)(1)(C). A plaintiff wishing to prevail on a claim under § 1514A must prove

by a preponderance of the evidence that "(1) [he] engaged in protected activity; (2) the employer knew that [he] engaged in the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."[3] *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008). To qualify as a protected activity, an employee's complaint must definitively and specifically relate to an instance of mail fraud, wire fraud, bank fraud, securities fraud, a violation of any rule or regulation of the SEC, or a violation of any provision of federal law relating to fraud against shareholders. *Id.* at 476-77. Further, § 1514A only pertains to an employee's report of conduct that he *reasonably believes* constitutes a violation of one of the six enumerated categories. *Id.* However, "an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected." *Id.* at 477.

Upon an employee's showing of the four required elements under § 1514A, an employer may avoid liability by showing with clear and convincing evidence that it would have taken the unfavorable personnel action regardless of the employee's protected activity. *Id.* at 476; 49 U.S.C. § 42121(b)(2)(B)(iv). "This independent burden shifting framework is distinct from the *McDonnell Douglas* burden-shifting framework applicable to Title VII claims." *Allen*, 514 F.3d at 476 (internal quotation marks omitted).

---

[3] The legal burdens of proof provided in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121(b), are applicable to actions arising under SOX's whistleblower provisions. 18 U.S.C. § 1514A(b)(2)(C).

## III.

## ANALYSIS

In its Motion, Celanese maintains that it is entitled to summary judgment on Hemphill's claims because he cannot establish the essential elements of his § 1514A claim. (Celanese's Br. 16.) Specifically Celanese contends Hemphill did not engage in protected activity and that Hemphill's alleged protected activity was not a contributing factor in his termination.[4] (*Id*.) Celanese further contends it has provided clear and convincing evidence that Celanese would have terminated Hemphill regardless of his alleged protected activity. (*Id*. at 14.) Finally, Celanese argues that Hemphill's claims for back pay must be limited. (*Id*. at 31-32.) The Court will address each issue in turn.

### A. The Elements of Hemphill's Claim

*1. Protected Activity*

Celanese argues Hemphill did not engage in protected activity under § 1514A because he never "reported" any questionable conduct through means other than his normal audit job duties. (Celanese's Br. 17.) Celanese notes Hemphill did not contact the Celanese complaint hotline or file a formal internal complaint regarding his concerns. (*Id*. at 17-18.) Further, Celanese contends Hemphill's reports were not definitively or specifically related to a violation of SEC law, but rather constituted general inquiries or concerns. (*Id*. at 18-19.) What's more, Hemphill could not have

---

[4] The Parties appear to agree that Hemphill's termination constituted an adverse employment action. (Celanese's Br. 26-27; Pl.'s Br. In Opp'n 18.) Celanese argues that any other allegation of retaliatory treatment does not constitue an adverse action under § 1514A. (Celanese's Br. 29-30.) Hemphill offers no response on this point. As such, the Court finds Hemphill has effectively waived any such assertion of retaliation beyond his termination. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) ("The failure to provide any legal or factual analysis of an issue results in waiver of that issue.").

reasonably believed the conduct he reported constituted a violation of an SEC law in light of his extensive audit experience. (*Id.* at 23-25.) Finally, Celanese contends Hemphill's "reports" did not pertain to instances of fraudulent behavior as required by § 1514A. (*Id.* at 26.)

Hemphill counters that he clearly engaged in protected activity under § 1514A. (Pl.'s Br. In Opp'n 10.) Hemphill contends his repeated complaints to management regarding violations of SEC law constituted protected activity within the meaning of § 1514A. (*Id.* at 11.) Hemphill further argues he is not required to establish the reported acts were fraudulent. (*Id.* at 14-15.)

As a preliminary matter, the Court must determine whether Hemphill actually made a "report" under § 1514A. Hemphill has provided evidence that he repeatedly "reported" violations of certain SEC laws not only through his regular audit reports, but also through multiple conversations with management. (*See* App. To Pl.'s Br. In Opp'n 21-22, 28, 31-32, 46.) While Hemphill has offered no explanation for why he failed to report such conduct through a means outlined by the BCP, the Court still finds Hemphill has provided adequate evidence to raise a material fact issue as to whether he made a "report" under § 1514A.

The Court next turns its analysis to whether Hemphill's reports constituted protected activity. In order to qualify as a protected activity, an employee's complaint must definitively and specifically relate to one of § 1514A's six enumerated categories and be based on the employee's reasonable belief that a violation of one of the six categories occurred. *Allen,* 514 F.3d at 476-77. In making a report protected under § 1514A, "[a]n employee need not 'cite a code section he believes was violated' in his communications to his employer, but the employee's communications must identify the specific conduct that the employee believes to be illegal." *Welch v. Chao*, 536 F. 3d 269, 276-77 (4th Cir. 2008) (quoting *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 322

(S.D.N.Y. 2006)). General inquiries as to certain conduct are insufficient. *Fraser*, 2009 WL 2601389, at *5. The Court notes Hemphill has produced evidence that he reported conduct constituting a violation of 15 U.S.C. § 78m(b)(5) of the Exchange Act of 1934.[5] (*See* App. To Pl.'s Resp. 21-22, 28, 31-32, 46.) Hemphill has offered his own deposition testimony in which he states that he notified management on several occasions of specific issues regarding the accuracy of financial records and potential FCPA violations occurring in Ocotlan. (*See id.*) While Hemphill's reports did not specifically cite the statute he perceived was being violated, it appears based on Hemphill's own testimony that his reports contained enough specificity as to the conduct he was identifying to raise a material issue of fact as to whether his report properly related to one of § 1514A's specifically enumerated categories.

Nonetheless, Hemphill must also have *reasonably believed* the conduct he was reporting actually violated the SEC's laws. *See Allen*, 514 F.3d at 477. An employee's reasonable belief must be analyzed under a subjective and an objective standard. *Id.* As such, "[t]he objective reasonableness of a belief is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.* At the time he made his reports, Hemphill was operating as an experienced auditor. Celanese has conceded that violations of company policy were discovered during both the Ocotlan Audit and the Expense Report Investigation. (Celanese's Br. 4-7.) In light of such policy violations, the Court finds even an experienced auditor might reasonably be concerned about related violations of SEC

---

[5]Section 78m(b)(5) provides that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in paragraph (2)." 15 U.S.C. § 78m(b)(5).

law, and a material issue of fact remains as to whether Hemphill reasonably believed such conduct constituted a violation of SEC law.

Finally, the Court turns to the issue of whether Hemphill's reports pertained to instances of fraud. Celanese contends Hemphill's report must relate to fraud and supports this assertion with a reference to *Allen*. (Celanese's Br. 26 (citing *Allen*, 514 F.3d at 40 n.1).) In *Allen*, the Fifth Circuit notes several administrative law judges view fraud as an essential element of all whistleblower claims, however, the Fifth Circuit does not offer its own view on whether fraud is actually required. *Allen*, 514 F.3d at 40 n.1. Other courts offer similarly unclear precedent as to whether fraud is a required element for all whistleblower claims. *Compare Livingston v. Wyeth*, 520 F.3d 344, 352 n.1 (4th Cir. 2008) (holding that to find fraud was not an essential element of all whistleblower claims would result in absurd suits based on an employee's complaints about administrative missteps or inadvertent omissions from filing statements), *with Smith v. Corning, Inc.*, 496 F. Supp. 2d 244, 248 (W.D.N.Y. July 9, 2007) (holding a complaint under § 1514A need not allege actual fraud against shareholders). There is no indication in the statutory text itself that all six enumerated categories must relate to fraud. *See* 18 U.S.C. § 1514A. Thus, absent a more clear directive that fraud must be alleged, the Court declines to impose such a requirement on Hemphill's claims. As such, the Court finds Hemphill's reports are not deficient simply because he did not allege he made a report of fraudulent conduct.

Having thus determined a material issue of fact remains as to whether Hemphill engaged in protected activity, the Court turns its analysis to whether such protected activity was a contributing factor in Celanese's decision to terminate Hemphill.

*2. Contributing Factor*

Celanese argues Hemphill's alleged "protected activity" was not a contributing factor in Celanese's decision to terminate Hemphill. (Celanese's Br. 26-27.) Celanese notes Hemphill has failed to provide any evidence that his protected activity played any role in Celanese's decision to terminate Hemphill. (*Id.* at 27.)

Hemphill responds that he has not only provided evidence showing Wegner was aware of his protected activity at the time she made the termination decision, but that material issues of fact remain as to whether he actually yelled at Hall in the first place. (Pl.'s Br. In Opp'n 17-18.) This being the case, Hemphill reasons that a material issue of fact remains as to whether his protected activity was a contributing factor in his termination. (*Id.*)

For § 1514A purposes, "[a] contributing factor is 'any factor which alone or in combination with other factors, tends to affect in any way the outcome of the decision.'" *Allen*, 514 F.3d at 476 n.3 (quoting *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, ARB Case No. 04-149, 2006 WL 3246904, at *13 (ARB May 31, 2006)). First, the Court finds it unremarkable that Wegner was aware of Hemphill's reports of questionable conduct. After all, Wegner is one of Hemphill's supervisors in the Audit Group and would have regularly received such reports anyway. Hemphill has offered no evidence tying Wegner's knowledge of his reports to her decision to fire him. In other words, Wegner's knowledge of Hemphill's arguably protected activity alone is not enough to show a nexus with her termination decision.

Nor is the Court persuaded by Hemphill's assertion that material issues of fact remain as to whether he yelled at Hall. Celanese has provided evidence showing it conducted an in depth and thorough investigation of the Shirley Hall incident. (*See* Def. Celanese Corporation's App. In Supp.

Of Its Mot. For Summ. J. And Br. In Supp. ("Def.'s App.") 27, 87, 95-105, 109-119, 121-124, 129-131, 136, 273.) Thus, the Court finds Celanese had a substantial basis to believe Hemphill engaged in the unprofessional behavior and should be terminated. Whether he actually confronted Hall is of no moment to the Court's analysis in the face of Celenese's in depth investigation. In sum, the Court finds no reasonable trier of fact could find Hemphill's protected activity was a contributing factor in Celanese's decision. As such, the Court finds Hemphill has failed to establish *all* the essential elements of his § 1514A claim.

### B. Celanese's Clear and Convincing Evidence

Assuming *arguendo*, however, that Hemphill has established the essential elements of his § 1514A claim, the Court finds Celanese's Motion for Summary Judgment should still be granted because Celanese has shown by clear and convincing evidence it would have terminated Hemphill regardless of his alleged protected activity. Celanese has offered evidence that its Human Resources department received a complaint regarding Hemphill's behavior from an employee outside the Audit Group. (Def.'s App. 109-116, 136.) Celanese engaged in a full-scale human resources investigation of Hemphill's behavior, headed by an employee with no prior knowledge of Hemphill's work, in which multiple employees were interviewed regarding the incident. (Def.'s App. 27, 87, 95-105, 109-119, 121-124, 129-131, 136, 273.) Following this investigation, the decision was made to terminate Hemphill because he had lied during the human resources investigation and behaved in an unprofessional manner. (*Id.*) Taking this evidence into account, the Court finds any reasonable trier of fact would find that Celanese has established by clear and convincing evidence it would have terminated Hemphill regardless of any protected activity. *See JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 712 (E.D. Va. 2007) (finding summary judgment was warranted based on clear and

convincing evidence of plaintiff's disdain and disregard for company policy); *Livingston v. Wyeth*, No. 1:03CV00919, 2006 WL 2129794, at *12 (M.D.N.C. 2006), *aff'd*, 520 F.3d 344 (4th Cir. 2008) (granting summary judgment based on clear and convincing evidence plaintiff would have been fired for insubordination regardless of any protected activity); *Pardy v. Gray*, No. 07 Civ. 6324(LAP), 2008 WL 2756331, at *6 (S.D.N.Y. July 15, 2008) (granting summary judgment on plaintiff's §1514A claims based on clear and convincing evidence of plaintiff's poor work performance). As such, no material issue of fact remains on this point, and Celanese is entitled to summary judgment on Hemphill's claims.[6]

## IV.

## CONCLUSION

The Court finds Hemphill has failed to show that a material issue of fact exists as to the essential elements of his § 1514A claim. Further, Celanese has established by clear and convincing evidence it would have terminated Hemphill regardless of any protected activity. As such, the Court finds Celanese's Motion for Summary Judgment should be and hereby is **GRANTED** (doc. 24).

**SO ORDERED.**

**DATED June 16, 2010**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[6] Having thus determined that summary judgment should be granted, the Court need not reach the issue of whether Hemphill's damages should be limited.